[Civ. No. 19884.   Second Dist., Div. One.   Jan. 4, 1954.]

EMPIRE STEEL BUILDINGS COMPANY (a Corporation), Respondent, v. HARVEY MACHINE COMPANY, Appellant.

Louis C. Vierbeck for Appellant.

Elmer J. Walther for Respondent.

DORAN, J.—The defendant herein is appealing from a judgment in favor of plaintiff in the amount of $30,000, of which $29,400 is for loss of profits, and $600 for expenses incurred by plaintiff. In the spring of 1951, the Harvey Machine Company, appellant, entered into negotiations with officials of the Empire Steel Buildings Company, respondent, in reference to construction of a foundry building on appellant's property. At that time Empire was engaged in constructing a "pot-room" building for Harvey; the latter was in a hurry for the foundry to be constructed, and desired work to be started immediately.

Construction of the foundry involved two parts, cement work for foundations and floor, and steel work which formed the building proper. At Harvey's request, Empire submitted a price of $148,750 for the cement work, and $139,761 for the steel work, upon the condition that Empire be given both units of the work. If the steel work only was to be done, then the price was to be $150,000. The Harvey officials suggested that Empire reduce the total price to $275,000 for the whole job. Empire was then given the steel contract at $150,000, and agreed to consider the $275,000 price for the entire job. This was on June 1, 1951, a Friday, and at Harvey's insistence, engineering work on the steel project commenced on the following Monday.

On Tuesday, June 5th, according to testimony by Gordon Anderson, Empire's secretary and treasurer, "I told Mr. Leo

Harvey that we had given it considerable thought and the best that we could do the entire job for would be $280,000 and he said, '$280,000, okay.' He says, '$5000 one way or the other doesn't make any difference to me as long as I get the building on time.' I said, 'Well, we have always made our previous deliveries and commitments on time, right?' And he said, 'Yes,' and I said, 'Well, we will schedule—we are going full blast on the steel work now, and we will schedule the concrete work right along with it.' He said, 'Okay, I am glad to see you boys get the deal,' and he shook my hand, and I thanked him and that was about it; that was the end of the conversation." There was similar, corroborative testimony given by Arthur M. Anderson, president of Empire Steel Building Company.

Between the 5th and 15th of June there were various telephone conversations between appellant's president, Homer Harvey, and Empire's president in respect to rushing the job through, in which Empire assured Harvey that the engineering work was progressing, and that "We will finish the job as scheduled." (September 15, 1951.) No written contract was executed.

On June 15th, President Homer Harvey telephoned Empire's president, "It looks like we will have to abandon the foundry building," and further said, "As you know, we are having trouble with the building department getting our permit and unless we get the permit we will have to abandon the entire project, which it appears at this time, so don't do anything further on the job and we will pay you for your expense and engineering."

That same day, upon learning that the foundry permit had been issued that day, Empire again called Harvey and inquired, "What do you want to lie to me for?" President Harvey, according to Empire's president, "stuttered and stated, 'Well, you are $30,000 high. We got another bid for $30,000. Do you want to cut your price?' I said, 'No sir. We have got a contract with you and I intend to follow our portion of the contract and I intend that you follow your portion of the contract. We have got a contract together.'" At a later conversation Harvey denied that any contract at all had been given to Empire. Harvey entered into a written contract with the firm of Vinnell Company, Inc. for construction of the building at a price of $265,933.31, and the present action followed resulting in a judgment for plaintiff.

█ It is appellant's contention that "The evidence does not support the findings or the judgment." Among other things the trial court found that "Empire and Harvey entered into an oral agreement on June 1, 1951 . . . that Empire would furnish the materials and labor necessary to fabricate and erect the steel portion of a foundry building . . . for which Harvey agreed to pay Empire the sum of $150,000.00; that at the special instance and request of Harvey and on June 4, 1951, Empire entered upon the performance of said agreement and performed certain engineering work necessary . . .; that on June 5, 1951, Empire and Harvey entered into another oral agreement . . ., which final agreement . . . also provided for the furnishing of plumbing and concrete work and all other materials and labor required for the construction and erection of said foundry building complete, in accordance with plans which were furnished to Empire by Harvey . . . for which Harvey agreed to pay Empire the sum of $280,000.00; that it was understood . . . that said agreement would be reduced to writing by the issuance of a purchase order in accordance with the usual practice and custom of said parties."

It was further found that Empire had agreed to and was ready to furnish a completion bond upon receipt of a purchase order from Harvey, but that the latter refused to reduce said final agreement to writing, without which writing Empire could not obtain such a bond. The court found that at Harvey's request, "Empire continued to and did perform engineering work necessary to carry out said final agreement and, in addition thereto, devoted considerable time in negotiating with persons and firms for the performance of portions of said work, and arranging for materials necessary for the construction of said building" of the reasonable cost and value of $600.00. Empire performed such work continuously until June 15, 1951, "at which time Harvey notified Empire to stop all work provided by said agreement," and thus prevented Empire from further performance. It was further found that in former agreements between the parties for construction of building, "in all cases at the special instance and request of Harvey, (Empire) commenced the performance of said agreements before the same had been reduced to writing by Harvey," and that later such agreements had been duly reduced to writing by Harvey.

Appellant's brief is largely devoted to an analysis of the testimony and evaluation thereof, to the end that the reviewing court shall determine that the trial court arrived at the

wrong decision. But such argument ignores the well established tenets of appellate procedure which prohibit a reviewing tribunal from any attempt to weigh the evidence or determine factual issues in cases where the record discloses substantial evidence in support of the trial court's findings.

The evidence herein, given by the contending parties, was, of course, in more or less direct conflict; Empire asserting that the negotiations amounted to a final contract on which performance immediately commenced at Harvey's request. Harvey, on the other hand, contended that these were mere preliminary and incomplete negotiations which never reached the status of a legal contract. This issue the trial court was obliged to determine as a question of fact. That the testimony given, and reasonable inferences from the evidence as a whole, furnish substantial support in favor of the findings and judgment cannot be doubted. And the fact that another court, whether trial or appellate, might conceivably arrive at a different decision, can furnish no ground for reversal. The question herein was clearly one of fact for the trial court to determine.

The appellant's contentions that "The alleged contracts are unenforceable because they are uncertain and indefinite, and there was no meeting of the minds upon the essential elements," and that "The evidence establishes that any agreement between the parties would necessarily have to be in writing and would not become effective until the terms thereof were reduced to writing and executed by them," are not persuasive. Again it may be pointed out that these propositions relate to questions of fact.

The record contains substantial evidence from which the trial court could find that the parties were in definite agreement concerning all the essential elements of the contract, and that Harvey was so satisfied with the arrangement that Empire was repeatedly urged to proceed with the building so that it might be completed by September 30, 1951.

In the absence of statutory requirement, as said in respondent's brief, "an oral agreement reached by the parties is binding unless it is clear that the parties intend that the agreement is not to be effective until reduced to writing." (*Johnston* v. *20th Century-Fox Film Corp.*, 82 Cal.App.2d 796, 820 [187 P.2d 474].) And in the case of two former buildings constructed for Harvey by Empire, work had been commenced several days before the contract was put in writing.

■ Appellant also complains that the trial court erred in the admission of evidence concerning the two prior building contracts between plaintiff and defendant, saying: "The fact that there had been contracts between the parties previously in nowise tended to prove that they entered into the contracts at issue." The latter statement, however, is beside the issue; such evidence was not received for the purpose of proving that the parties entered into the present contract, but rather in respect to the practice of commencing work before previous oral contracts had been reduced to writing. It is conceded by appellant that evidence of prior dealings between parties is admissible where tending "to illustrate the transaction in question (10 Cal.Jur. p. 825)." Nor does the record indicate any reversible error in respect to exclusion of evidence offered on the part of the appellant.

■ Finally, it is claimed that "Appellant was prevented from having a fair trial for the reason that the trial court prejudged the case." This complaint is predicated upon the fast that before plaintiff had rested its case and before defendant had started to put on its case, the trial judge called the parties into chambers and suggested a compromise, stating that at that point of the trial, "it looked as though there was a contract."

At the hearing of defendant's motion for new trial, the trial court denied that the case had been prejudged, and said: "At that time both Mr. Leo Harvey and Mr. Homer Harvey had testified, and the Court had the benefit of their testimony. The Court simply told how the evidence stacked up at that time, as he saw the case, and it was quite apparent to the Court that Mr. Leo Harvey was lying—that he was evasive . . . and that Mr. Homer Harvey was not giving straight answers but was quite evasive . . ." The trial then proceeded; the judge took it under submission for some 30 days and "very carefully weighed the evidence and studied the law."

The rule is correctly stated in *Rosenfield* v. *Vosper*, 45 Cal. App.2d 365, 371 [114 P.2d 29], as follows: "Although efforts on the part of a trial judge to expedite proceedings and to encourage settlements are ordinarily to be commended, such efforts should never be so directed as to compel either litigant to make a forced settlement." In the instant case there. is nothing to indicate that any pressure was imposed in order to effect a compromise. The trial proceeded at some length, the defendant's case was fully presented, and the case taken under

submission before being decided. Aside from the appellant's unsupported statement to that effect, there is nothing to suggest that the trial court prejudged the case.

The judgment is affirmed.

White, P. J., and Drapeau, J., concurred.

A petition for a rehearing was denied January 21, 1954, and appellant's petition for a hearing by the Supreme Court was denied March 3, 1954. Schauer, J., and Spence, J., were of the opinion that petition should be granted.