[S. F. No. 18963. In Bank. Mar. 15, 1955.]

EDWARD F. McKEON, Respondent, v. BEN L. GIUSTO, Appellant.

154

W. Burleigh Pattee, Bruce M. Casey and Chickering & Gregory for Appellant.

Joseph C. Haughey and Toland C. McGettigan for Respondent.

TRAYNOR, J.—In August, 1950, defendant orally agreed to employ plaintiff on a full time basis in his general contracting business. The agreement was put in writing in April, 1951, in the form of a letter from defendant to plaintiff, which provided:

"I hereby offer to employ you as an estimator and office manager in my general contracting business for a period of

one year commencing January 1, 1951, and ending December 31, 1951, upon the following terms and conditions:

"1. I agree to pay you a salary of One Hundred Dollars ($100) per week, together with a sum which when added to the aforesaid salary will equal thirty (30) percent of my net profits from said business, before income taxes, but after deducting all charges and expenses, during said year, and computed as hereinafter set forth. Said additional sum shall be payable annually after the completion of the annual audit of the books of my business, but in any event before March 1, 1952.

"2. In computing the said net profits there shall be excluded all payments received by me from the Drs. A. and E. Torre for the construction of a building at Gough and Union streets in San Francisco, California. There shall be included in computing the net profits, if any, the amount due on all the jobs which have been fully completed during the year 1951, but on which full payment may not have been made during said year; provided, however, that your share of any net profits resulting from said jobs shall not be payable until final payment on such jobs has been received.

"3. It is understood that in determining the net profit from said business all computations shall be based on [an accrual] basis of accounting and that the books shall be audited on a calendar year basis. The final audit as presented by the accountants shall be conclusive and final in determining net profits.

"4. It is agreed that in the event you continue in my employ after December 31, 1951, it shall be at a salary of One Hundred Dollars ($100) per week plus only such amounts, if any, as may hereafter mutually be agreed upon in writing.

"5. The foregoing agreement is intended to supersede the oral agreement under which you entered my employ on August 1, 1950. . . .

"The FOREGOING TERMS are hereby accepted and confirmed. [signed] E. F. McKeon."

Although no written agreement extending the profit sharing provision of the contract was executed, plaintiff continued in defendant's employ until February 29, 1952, and he continued to receive $100 per week until his employment terminated. Thereafter plaintiff brought this action to recover profits alleged to be due under the terms of an oral extension of the written contract. Defendant denied that any oral extension had been made and deposited $132.64 in court, the

amount he conceded was still due on 30 per cent of his profits for 1951.

After a trial before the court sitting without a jury, the court found that "following the expiration of the said written agreement of employment . . . plaintiff and defendant, B. L. Giusto, on or about the 14th day of January, 1952, orally agreed that said agreement would be extended from and after January 1, 1952, and that the plaintiff would continue in the employment of said defendant, and said defendant would continue to employ plaintiff upon the same terms and at the same rate of compensation specified and set forth in Paragraphs 1, 2 and 3 of said written agreement of employment . . . , and contrary to and in modification and abandonment of the provisions of Paragraph 4 . . . , and for such period of time as would be required to bring to completion those . . . [three building] projects which were entered upon by defendant prior to December 31, 1951, but which were not completed on said date." It also found that on or about February 26, 1952, "defendant advised plaintiff that he did not wish to continue with said contract and said defendant did thereupon and wrongfully and without cause notify plaintiff that his services were no longer wanted or required by defendant and plaintiff's contract was terminated and at an end." Judgment was entered in favor of plaintiff for $14,396.28, the amount that the parties stipulated would be plaintiff's share of the profits from the three jobs started in 1951 but not completed until 1952, under the terms of the oral extension agreement found to exist by the trial court. Defendant appeals.

Defendant contends that there is no evidence to support the finding that an oral agreement extending the written contract was made and that even if such an agreement was made, it would be invalid under section 1698 of the Civil Code.

Section 1698 provides that "A contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise." The section presupposes an existing contract in writing, and accordingly, it does not invalidate a new oral agreement made after a written contract has expired by its terms or has been orally abrogated, cancelled, or rescinded by the parties. (*Treadwell* v. *Nickel*, 194 Cal. 243, 258-259 [228 P. 25]; *McClure* v. *Alberti*, 190 Cal. 348, 350 [212 P. 204]; *Pearsall* v. *Henry*, 153 Cal. 314, 325 [95 P. 154, 159]; *Burcham* v. *Caprio*, 94 Cal.App.2d 514,

517 [210 P.2d 877]; *Martin* v. *Butter,* 93 Cal.App.2d 562, 566 [209 P.2d 636]; *Treat* v. *Ogden,* 56 Cal.App.2d 70, 74-76 [132 P.2d 493]; *Klein Norton Co.* v. *Cohen,* 107 Cal. App. 325, 331 [290 P. 613]; *Bevans* v. *Huntington,* 65 Cal. App. 266, 268 [223 P. 572].) ▆ In the present case, in the absence of an agreement extending the written contract, neither party was bound by its terms after December 31, 1951. After that date plaintiff was free to leave defendant's employ, and defendant was free to discharge him. Thus, the contract was at an end on December 31, 1951, unless the parties agreed that it should continue. ▆ It is true that the fact that plaintiff continued in defendant's employ after December 31, 1951 would, standing alone, indicate that the parties had agreed to a continuation of the written contract. (See Lab. Code, § 3003.) ▆ There is substantial evidence, however, that the parties did not intend that plaintiff's continued employment should be compensated at the rate of $100 per week as provided in the written contract. Thus, in December defendant told plaintiff that he would get his share of the profits on the uncompleted jobs, and plaintiff continued in defendant's employ after the end of the year in reliance on this promise. Although the trial court found that the parties did not execute their new oral agreement until on or about January 14th, the foregoing evidence clearly indicates that the parties did not intend that the provisions of the written contract should be applicable between December 31, 1951, and the time the new oral agreement was made, and the trial court was therefore justified in concluding that the written contract expired at the end of the year. ▆ Accordingly, section 1698 would not invalidate any new oral agreement that the parties might make.

▆ It is contended, however, that the findings of the trial court cannot reasonably be interpreted as determining that the written contract terminated on December 31, 1951. This contention is based upon the findings that refer to the oral agreement as a modification of the written contract and upon the lack of a finding that the oral agreement superseded the written contract. The trial court expressly found, however, that the oral agreement was made on or about the 14th day of January ''following the expiration of the said written agreement of employment,'' and as pointed out above, if the written contract had expired it no longer stood in the way of the parties entering into a new oral agreement. Moreover, in view of the finding that the oral agreement was not made

158

until after the expiration of the written contract, the findings with respect to an oral modification of the written contract may reasonably be interpreted as meaning, not that the oral agreement was a modification of an *existing* written contract, but that the new terms of employment were in part different from those set out in the expired written contract. Thus, the oral agreement constituted a modification of the written contract only in the sense that it adopted the provisions thereof with modifications agreeable to both parties. So interpreted, the findings are consistent and support the judgment. To interpret the references to an oral modification as constituting findings that an existing written contract was modified, on the other hand, would create a clear conflict with the finding that the oral agreement was not made until after the written contract had expired and would violate the settled rule that the findings must be considered as a whole and liberally construed to support the judgment. (*Haight* v. *Haight,* 151 Cal. 90, 92 [90 P. 197]; *Hotaling* v. *Hotaling,* 193 Cal. 368, 385 [224 P. 455]; *Hartford* v. *Pacific Motor T. Co.,* 16 Cal.App.2d 378, 381 [60 P.2d 476]; *Snearly* v. *Hiestand,* 50 Cal.App. 393, 396 [195 P. 272].)

The pivotal question, therefore, is whether the evidence sustains the finding of the trial court that on or about January 14th the parties orally agreed that plaintiff should continue to share in the profits of defendant's business until such time as the three building projects commenced in 1951 should be completed. Defendant contends that the evidence shows only that the parties were negotiating the terms of a new contract, but that it was understood that no new contract would become binding until it was reduced to writing and signed by both parties. ▪ It is not uncommon, however, for parties to make an oral agreement with the intention to reduce it to writing or supersede it by a new written contract. In such cases, whether they intended their oral agreement to be immediately effective or only to become binding on the execution of the writing, is ordinarily a question of fact to be resolved by the trial court or jury in the light of all the surrounding circumstances. (*Empire etc. Bldgs. Co.* v. *Harvey Mach. Co.,* 122 Cal.App.2d 411, 415 [265 P.2d 32]; *Columbia Pictures Corp.* v. *De Toth,* 87 Cal. App.2d 620, 629 [197 P.2d 580]; *Johnston* v. *20th Century-Fox Film Corp.,* 82 Cal.App.2d 796, 820-821 [187 P.2d 474].)

▪ In the present case plaintiff testified that he talked to defendant in December, 1951, about a renewal of his con-

tract. He pointed out to defendant that some of the jobs on which he had worked would not be completed in 1951 and that he wanted to be covered for his percentage of the profits on those jobs. Defendant told him that he would take the matter up with his lawyer and not to worry, that he would get his share on those jobs. Defendant stated at that time that he would renew the contract. The matter was discussed by the parties again in the middle of January, at which time defendant again promised to have a written contract drawn up and advanced plaintiff $500 as part of his share of the profits anticipated on a construction job for the Navy, one of the jobs started in 1951 and due to be completed early in 1952. In the middle of February, however, defendant told plaintiff that ''I would like to change the set-up and possibly put you on a salary basis and a bonus arrangement, or something more definite.'' He stated that the profit sharing arrangement was unsatisfactory for government work because government contracts were subject to renegotiation. Plaintiff stated that he was unwilling to make any more agreements until he knew what he ''had coming from what was on the books.'' There were further conversations, but the parties were unable to agree on any new terms of employment, and plaintiff left defendant's employ at the end of February, after defendant had made it clear that he was unwilling to continue the profit sharing agreement.

From the foregoing evidence the trial court was justified in concluding that the parties reached a binding oral understanding in January covering the profits on the jobs commenced in 1951 but not completed until 1952, and that defendant wrongfully terminated this agreement at the end of February. Thus, in December defendant told plaintiff that he would get his share of the profits on the uncompleted jobs, and he must have known when plaintiff continued in his employ after the end of the year that plaintiff was relying on his promise. From the fact that in January plaintiff asked for and was given an advance on the anticipated profits of the Navy job, the trial court could reasonably infer that the parties had agreed that the new oral agreement was in effect. Moreover, the trial court could infer from defendant's February proposal to change the setup from a profit sharing to a salary basis that defendant recognized at that time an existing profit sharing agreement. Finally, the conclusion that the parties had reached a binding oral understanding finds support in the evidence with respect to their dealings

in the past. Thus, when plaintiff first entered defendant's employ, he worked for eight months under an oral contract before his agreement was reduced to writing as contemplated by the parties.

Defendant contends, however, that the force of the foregoing evidence was completely destroyed by plaintiff's own testimony, which he interprets as establishing that the parties never reached a new agreement. This contention confuses the issue of whether the parties reached a new oral agreement with respect to the profits for the three jobs started in 1951 with the question whether they agreed to all of the terms of a written contract that would integrate or supersede their oral agreement. It is true that plaintiff testified that he expected to secure a new written contract and that he did not consider himself bound to accept whatever written contract defendant might offer. Thus it appears that there were certain ambiguities with respect to the meaning of completed jobs and the method of accounting that plaintiff wanted to have clarified in the new contract, and with respect to these ambiguities plaintiff testified that the parties never reached any agreement. It is not contended, however, that the oral agreement found by the court to exist, was too indefinite to constitute a valid contract, and the fact that the parties might thereafter be unable to agree on its clarification would not affect its validity.

Defendant also relies on plaintiff's testimony that he was unwilling to make any ''more'' agreements until he knew what he ''had coming from what was on the books.'' This testimony, however, referred to plaintiff's response to defendant's February proposal that the profit sharing arrangement be changed. Plaintiff's refusal at that time to make any more agreements until he knew what he had coming is clearly consistent with his position that he was then entitled to share in the profits under the oral agreement. It indicates only an unwillingness to change that agreement until he knew what he would receive under it.

Finally defendant relies on plaintiff's testimony that he left defendant's employ because ''I couldn't get an accounting, and I wasn't going to get any more contract or any renewal, and I had to think about going out and getting another job. The rug was pulled out from under me.'' This testimony is ambiguous. The phrase ''any more contract or any renewal'' might be interpreted as referring to any contract after, or any renewal of, the 1951 contract. It might

also be interpreted as referring to any written contract or renewal after the January 1952 oral contract. It was for the trial court to resolve this ambiguity in the light of all of the evidence. Since at the time to which plaintiff referred, defendant had clearly indicated that he was not going to execute any written profit sharing agreement, as he had promised to do, or recognize plaintiff's right to share in the profits on the job not completed in 1951, as he had also promised to do, we cannot say as a matter of law that the trial court erred in interpreting this testimony as referring to the new written contract that was to integrate or supersede the oral agreement.

The judgment is affirmed.

Gibson, C. J., Shenk, J., and Carter, J., concurred.

EDMONDS, J.—The judgment is affirmed upon the theory that the written contract was terminated at the end of 1951 and that the parties thereafter made a new, superseding oral agreement. The trial court made no express finding to that effect. It is reasoned, however, that such a finding may be implied from the use of certain phrases, one of which states that the written contract was orally renewed and modified. Then, under the rule that findings are to be construed liberally in support of the judgment, the implied finding is given controlling effect over nearly a dozen express findings directly in conflict with it.[1]

---

[1] All of the findings relating to the agreement of January 14th are as follows. Emphasis is added:

"IV

"That it is true as in Paragraph VII of plaintiff's first cause of action in his complaint herein alleged and set forth that following the expiration of the said written agreement of employment made and entered into by said plaintiff and said defendant, B. L. Biusto, on April 11, 1951, as hereinabove set forth, said plaintiff and defendant, B. L. Giusto, on or about the 14th day of January, 1952, *orally agreed* that said *agreement* would be *extended* from and after January 1, 1952, and that the plaintiff would continue in the employment of said defendant, and said defendant would continue to employ plaintiff upon the same terms and at the same rate of compensation specified and set forth in Paragraphs 1, 2 and 3 of said written agreement of employment as executed on April 11, 1951, and contra*ty* to and *in modification and abandonment* of the provisions *of Paragraph 4 of said agreement* of employment, and for such period of time as would be required to bring to completion those certain hereinafter described projects which were entered upon by defendant prior to December 11, 1951, but which were not completed on said date, and the court further finds in connection with *said oral extension and modification of said written agreement* that

Under the written contract, McKeon was to receive $100 per week plus a percentage of the profits from jobs completed in 1951. Paragraph 4 provided: "It is agreed that in the event you continue in my employ after December 31, 1951, it shall be at a salary of One Hundred Dollars ($100) per week plus only such amounts, if any, as may hereafter mutually be agreed upon in writing." It is undisputed, and the trial court so found, that McKeon remained in Giusto's employ continuously until February 29, 1952.

In his complaint for "moneys due" filed in April of that year, McKeon sought an accounting to enable him to ascertain "the amount of money remaining due to him under and pursuant to said agreement of employment made and entered into by and between plaintiff and defendant on the 11th day of April, 1951, as aforesaid, and as thereafter extended and

---

said defendant . . . did thereupon and repeatedly thereafter represent, state to, and advise plaintiff that he . . . would cause the terms of said agreement as orally modified and extended to be reduced to writing and the plaintiff remained in said defendant's employ on and after December 31, 1951, pursuant to the terms, conditions and promises of the *oral modification of said written agreement* and in consideration thereof and in the belief and upon the understanding and representations of defendant that said oral agreement would be immediately placed in writing.

"V

"The Court finds that it is true that plaintiff under and pursuant to *said written agreement of employment* and the *oral extension and modification thereof* as hereinabove found and set forth, performed and rendered work, labor and services for said defendant, . . . from the date of January 1, 1951, up to and including the 29th day of February, 1952. . . .

"VI

"That from and after December 31, 1951 to and including February 29, 1952, the defendant requested, permitted and allowed plaintiff to remain and continue in defendant's employment . . . and led plaintiff to believe that said employment of plaintiff by defendant was to continue until completion of the said projects, and that plaintiff was to be compensated at the same rate and upon the same terms as set forth in that *certain written agreement* between plaintiff and defendant. . . .

"VII

"The court further finds that subsequent to December 31, 1951, and while plaintiff remained in the employ of defendant, B.L.Giusto, under and pursuant to *said written contract of employment as orally extended, modified and executed,* as hereinabove found, plaintiff repeatedly requested defendant to provide a new contract in writing pursuant to the oral agreement of plaintiff and defendant, but that said defendant, although promising so to do, failed and neglected to produce such written contract.

"VIII

"The court further finds that prior and subsequent to December 31, 1951, and while plaintiff remained in the employ of said defendant, B. L. Giusto, under and pursuant to *said written contract of employment as orally extended and modified* as hereinabove found, plaintiff repeatedly requested said defendant to provide plaintiff with a final audit. . . .

continued." He pleaded the making of the written contract and alleged that the parties "orally agreed to extend said agreement and to continue said plaintiff in his employment upon . . . terms . . . contrary to and in modification of the provisions of Paragraph 4 of said agreement of employment."

Findings were made in favor of McKeon upon the theory of a breach of the written contract as extended and modified by a completely executed oral agreement. Specifically, the breach was found to have resulted from Giusto's wrongful discharge of McKeon which prevented him from performing the conditions "of the said agreement so made and entered into by and between plaintiff and defendant on the 11th day of April, 1951, as heretofore found, and as thereafter and on

---

**"X**

"The court further finds that on or about the 26th day of February, 1952, and while said plaintiff was continuing to perform work, labor and services for the defendant, and while said plaintiff was awaiting the delivery to him of an agreement in writing covering his extended employment . . . defendant advised plaintiff that he did not wish to continue with said contract . . . and plaintiff's contract was terminated and at end.

**"XI**

"That it is true that plaintiff had at all times performed and was at all times and on said 26th day of February, 1952, ready willing able to continue to perform all conditions of the *said agreement so made and entered into by and between plaintiff and defendant on the 11th day of April, 1951,* as heretofore found, *and as thereafter and on or about the 14th day of January, 1952, orally modified and extended as of January 1, 1952, and as thereafter executed,* on his part required to be performed but that plaintiff was prevented therefrom by defendant. . . .

**"XV**

"The court further finds that prior to December 31, 1951, said defendant commenced work upon projects and/or jobs described as follows. . . .

"That plaintiff, at the instance and request of defendant, continued to render and perform and rendered and performed . . . labor and services upon each of said projects . . . from and after December 31, 1951, and up to and including the 29th day of February, 1952, upon the understanding and agreement that he, the said plaintiff would be compensated therefor in accordance with the terms and provisions of his *said agreement with defendant as first written and as thereafter modified and extended and carried out and executed* as hereinabove found.

**"XXIII**

"The court finds that said written contract of April 11, 1951, was a valid and binding contract.

**"XXIV**

"The court finds that the *oral agreement entered into* by and between plaintiff and defendant, B. L. Giusto, also known as Ben L. Giusto, *on or about January 14, 1952, altering, amending and modifying the provisions of paragraph (4) of said written agreement* as hereinabove found, was thereafter executed by both of said parties and was a valid and binding agreement."

or about the 14th day of January, 1952, orally modified and extended as of January 1, 1952, and as thereafter executed . . ..'' Throughout the findings the basis of Giusto's liability is stated to be ''the oral modification of said written agreement,'' ''said written agreement of employment and the oral extension and modification thereof,'' and phrases of similar import.

The basis for implying a superseding oral agreement is the portion of finding IV which states that ''following the expiration of the said written agreement of employment'' the parties ''orally agreed'' upon terms ''contrary to and in modification and abandonment of the provisions of Paragraph 4.'' The word ''expiration'' is construed as meaning an abandonment of the terms of the written contract as of December 31, 1951. In that situation, it is said, the oral agreement of January 14th necessarily must be a superseding one.

To construe ''expiration'' as meaning an ''abandonment'' of the terms of the written contract is to contradict directly the express findings which state that the written contract was renewed and extended. Those findings are consistent with section 3003 of the Labor Code, which reads: ''If, after the *expiration* of an agreement respecting wages and term of service, the parties continue the relation of master and servant, they are presumed to have renewed the agreement for the same wages and term of service.'' (Emphasis added.) It is undisputed, and so found by the trial court, that McKeon remained in Giusto's employ for two weeks after December 31, 1951, and before the purported oral agreement was made. In that situation, a renewal of the original contract will be implied in the absence of a contractual provision to the contrary or an affirmative showing that the parties did not so intend. (*Henkel* v. *J. J. Henkel Co.*, 212 Cal. 288, 291-292 [298 P. 28]; *Williams* v. *Schalk Chemical Co.*, 11 Cal.App.2d 396, 397-398 [53 P.2d 1015]; *Lemley* v. *Doak Gas Engine Co.*, 40 Cal.App. 146, 149 [180 P. 671]; Lab. Code, § 3003.)

There is no contractual provision contravening the findings which state that the original agreement was renewed. Instead, the written contract expressly contemplated McKeon's continuing employment beyond 1951. Paragraph 4 provided that ''in the event you [McKeon] continue in my employ after December 31, 1951, it shall be at a salary of One Hundred Dollars ($100) per week plus only such amounts, if any, as may hereafter mutually be agreed upon in writing.''

The majority reason that "the [written] contract was at an end on December 31, 1951, unless the parties agreed that it should continue. Under its terms, however, it could continue only if plaintiff agreed to continue working for $100 per week, or the parties agreed in writing on additional amounts." I am unable to find in the contract "terms" making a continuation of its provisions dependent upon an agreement as to salary. That matter was fixed in paragraph 4 as being "One Hundred Dollars ($100) per week plus only such amounts, if any, as may hereafter mutually be agreed upon in writing." The only condition precedent to the operation of that provision was that "you continue in my employ after December 31, 1951," which unquestionably McKeon did.

It is suggested also that there is "substantial evidence . . . that the parties did not intend that plaintiff's continued employment should be compensated at the rate of $100 per week as provided in the written contract." This evidence, it is said, "clearly indicates that the parties did not intend that the provisions of the written contract should be applicable between December 31, 1951 and the time the new oral agreement was made, and the trial court was therefore justified in concluding that the written contract expired at the end of the year."

The trial court, however, made no finding that the parties intended to abandon the provisions of the written contract after 1951. On the contrary, it expressly found that the contract was renewed and extended. Whether the testimony relied upon as indicating an intention to abandon the written contract is sufficient to support such an inference is questionable.[2] Certainly, it is not so clearly persuasive as to require the contrary finding to be disregarded.

The pleadings were framed and findings were made upon the theory of an oral modification of the extended written

[2]McKeon was asked if he had a conversation with Giusto in December, 1951, "concerning the extension of the written contract of employment." McKeon replied that he did and stated:

"On or about the middle of December I told Mr. Giusto that the contract was expiring at the end of the year, and asked him if he would have it renewed, making those corrections that we had discussed back in April on an accrued basis of accounting; and also to clarify those 'complete jobs'. . . . I wanted to be sure that I was covered for my percentage of those jobs, and so advised him. And he said he would take the matter up with the lawyer, and not to worry about it; that I would get my share of these jobs. . . ."

McKeon was asked: "Did Mr. Giusto state to you at that time, and in that conversation, Mr. McKeon, that he would renew your contract?" The reply was, "He did."

agreement. Although the findings should be construed liberally in support of the judgment, that principle does not allow a strained construction of them in order to reach what may appear to be an equitable result.

I would reverse the judgment.

Schauer, J., and Spence, J., concurred.

Appellant's petition for a rehearing was denied April 13, 1955. Edmonds, J., Schauer, J., and Spence, J., were of the opinion that the petition should be granted.